BIRD *v.* STATE.

(*Nashville.*  December Term, 1914.)

1. **STATUTES. Construction. Acts of same legislature.**
   Acts 1913 (2d Ex. Sess.), ch. 1, regulating the shipment of intoxicating liquor into the State, or between points within the State, and chapter 3, prohibiting the conveying or shipping liquor from one county to another in the State, are in *pari materia,* and must be construed together so as to harmonize with each other, especially since they were passed at the same legislative session and are presumed to be actuated by the same public policy; and the exceptions to the prohibition to the shipment of liquor maintained in chapter 1 will be construed to apply to chapter 3.   (*Post, pp.* 525, 526.)

   Acts cited and construed:  Acts 1913, ch. 1-3.

   Cases cited and approved:  Pond v. Trigg, 52 Tenn., 532; Graham v. Gunn, 87 Tenn., 458;. Merriman v. Lacefield, 51 Tenn., 209; State v. Manson, 105 Tenn., 232.

   Case cited and distinguished:  Houston & Texas Central R. R. Co. v. State, 95 Tex., 507.

2. **INTOXICATING LIQUORS. Offenses. Personal transportation. "Ship." "Deliver."**
   Acts 1913 (2d Ex. Sess.), ch. 3, which is entitled "An act to prohibit" the shipment and conveying of intoxicating liquors from one county to another, but providing that the venue· for prosecution shall be in the county to which shipments are made or in which deliveries are made, does not prohibit the personal transportation of liquor, since "ship" means to put or receive on a ship or other vessel for transportation, to send away, to get rid of; and "deliver" means to give or transfer, to yield possession of, to make or give over, to make the delivery of, to commit, to surrender, to rescind; and both imply a change of custody, and do not apply to personal transportation, and

Bird v. State.

it will be presumed that if the legislature intended to prohibit personal transportation, it would have provided for the venue of prosecutions for violation of that provision also. (*Post, pp.* 526, 527.)

3. **STATUTES. Construction. "Or." "And."**

In that act the word "or" between the words "ship" and "convey" should be read "and"; those conjunctions being frequently convertible. (*Post, p.* 527.)

Case cited and approved: Ransom v. Rutherford County, 123 Tenn., 1.

4. **CONSTITUTIONAL LAW. Statutes. Presumption in favor of constitutionality.**

Acts 1913 (2d Ex. Sess.), ch. 1, which is entitled "An act regulating the shipment" and delivery of intoxicating liquor, and section 9 of which excepts from the prohibition of the acts personal transportation of liquor for personal or family use in quantities not exceeding one gallon, does not prohibit the personal transportation of quantities greater than one gallon, since the title includes only the regulation of shipment and delivery, and to construe it to prohibit personal transportation would render the statute unconstitutional under Const., art. 2, sec. 17, requiring the subject of an act to be expressed in its title. (*Post, pp.* 528-530.)

Acts cited and construed: Acts 1913, ch. 1-3.

Constitution cited and construed: Sec. 17, art. 2.

5. **INTOXICATING LIQUORS. Regulation of shipment. Constitutionality.**

The legislature can, in the exercise of its police powers as an aid to the enforcement of the law against the sale of liquor, regulate shipments of liquor, and thereby prohibit acts which in themselves are harmless. (*Post, p.* 530.)

Cases cited and approved: State, ex rel., v. Persica, 130 Tenn., 48; Kirk v. State, 126 Tenn., 16; Motlow v. State, 125 Tenn., 547; State v. Mill Co., 123 Tenn., 399.

Bird v. State.

FROM RUTHERFORD AND CANNON.

Appeal from Criminal Court of Rutherford and Cannon Counties.—JOHN RICHARDSON, Judge.

TOM LYTLE, JAS. D. RICHARDSON, JR., and S. S. BROWN, for appellants.

WILLIAM H. SWIGGART, assistant attorney-general, for the State.

MR. JUSTICE GREEN delivered the opinion of the Court.

In the four cases above, indictments were returned against defendants below for unlawfully carrying, transporting, and conveying intoxicating beverages from one county to another in the State of Tennessee. Appropriate steps were taken by all the defendants in their own behalf, but they were nevertheless all found guilty, and have appealed in error to this court.

In passing on these cases, it becomes necessary to consider and determine the real meaning of two acts of the legislature passed at the second extra session of 1913. Chapter 1 was passed October 16, 1913, and approved by the governor on October 17, 1913, at 11:20 a. m. Chapter 3 was passed on October 16, 1913, and approved on October 17th, 1913, at 10:45 a. m. Chapter 1 was therefore the last act to become a law.

The title and sections of chapter 1 necessary to be considered in this investigation are as follows:

"An act regulating the shipment of intoxicating liquor
into this State or between points within this State;
regulating the delivery of such liquor; providing for
the filing of statements with the county clerk show-
ing such shipments, and providing that certified
copies of each statement may be used as evidence,
and for the fees to such county clerk for making such
copies; prescribing penalties for violation of the pro-
visions of this act; and conferring jurisdiction for
the trial of violations of this act upon the courts of
the county from or to which such shipments may be
made, and regulating the procedure in relation there-
to.

"Section 1.   Be it enacted by the general assembly
of the State of Tennessee, that it shall be unlawful for
any person, firm, or corporation to ship, carry, trans-
port or convey any intoxicating liquor into this State,
or from one point to another within this State, for the
purpose of delivery, or to deliver the same to any per-
son, firm, company, or corporation within the State,
except as hereinafter provided."

. . . . . .

"Section 9.   Be it further enacted, that nothing in
this act shall make it unlawful:

"1.   For any person, for the use of himself or the
members of his family residing with him, to personally
carry and transport to his own home such intoxicating
liquor in quantities not exceeding one gallon.

"2.   For any person to order and have shipped and
delivered to him from without the State, for his own

use or the use of the members of his family residing with him, such intoxicating liquors in quantities not exceeding one gallon.

"3. For any person, for his own use and the use of his family residing with him, to order from and have shipped and delivered to him such intoxicating liquor, in quantities not exceeding one gallon, from any point in this State where such liquor can be lawfully sold for the purpose for which it is ordered; provided, the person, firm, or corporation from whom such liquor is ordered or bought or by whom it is shipped is authorized by the laws to this State to sell liquor for the purpose for which it is ordered.

"4. For any priest or minister of any religious denomination or sect to order, ship, or have shipped, carried, and delivered wine for sacramental purposes; or for any common carrier, corporation, or person to ship, transport, carry, or deliver wine for said purposes to any priest or minister of any religious denomination or sect.

"5. For any person, firm, or corporation to order, ship, transport, carry, or deliver intoxicating liquor into and within this State for purposes for which such liquor can be lawfully sold under the laws of this State, and to a person lawfully authorized to sell such liquors. But in all cases where any person, firm, or corporation carries and delivers any such intoxicating liquor for the purposes covered by subsections 2, 3, 4, 5 of this section, such person, firm, corporation or carrier, or the agent of any such firm, person, corporation, or carrier, shall require of the consignee a state-

ment in writing, to be signed by such consignee, similar, in form to the statement set out in section 5 hereof, showing the purpose for which said liquor has been ordered and is to be used, and, in cases covered by subsection 5 of this section, that the consignee is authorized by law to sell such liquor for the purpose for which it was ordered and delivery is sought; and any person who shall make a false statement in regard to the purpose for which said liquors are bought and are to be used or are used, shall be subject to the penalties prescribed in section 6 hereof.

"Section 10. Be it further enacted, that the delivery for shipment, the shipment, carriage, transportation, and delivery to the consignee of such liquors within the prohibition of this act from one point in this State to another point within the State, shall be deemed a continuing offense; and both the circuit and criminal courts held in the county from or to which such shipments are made, or in which delivery of any . . . shipment is made, shall have jurisdiction for the trial of any and all violations of this act, and the grand juries of said counties shall be vested with inquisitorial powers over violations of this act, and the circuit and criminal judges shall call attention to this act in charging the grand juries."

We set out in full chapter 3:

"An act, to prohibit the conveying or shipping of whisky, wine, ale, beer, and all other intoxicants from one county to another county in this State, and to give jurisdiction to the courts of the county to which ship-

ment is made to try violations of this act, and to fix punishment for violation of same.

"Section 1. Be it enacted by the general assembly of the State of Tennessee, that it shall be unlawful for any person, firm, or corporation to ship or convey whiskey, wine, ale, beer, and all other intoxicants, from one county to another county in this State.

"Section 2. Be it further enacted, that the circuit and criminal courts held in the county to which shipments are made, or in which deliveries of any intoxicants are made, shall have jurisdiction to indict and try violators of this statute; and grand juries shall be vested with inquisitorial powers over violations of this statute, and circuit and criminal judges shall call attention to this statute in charging the grand juries.

"Section 3. Be it further enacted, that any person, firm, or corporation violating section 1 of this act shall, upon conviction, be fined not less than one hundred dollars and not more than five hundred dollars for each offense, and may, in the discretion of the court, in addition to a fine, be incarcerated in the county jail for any period of time the court thinks proper and right, so that it does not exceed six months.

"Section 4. Be it further enacted, that this act take effect from and after its passage, the public welfare requiring it."

Apparently it is unlawful, under the provisions of chapter 3, for a citizen to personally carry his own liquor in any quantity from one county in the State to another. Likewise it seems unlawful under this act to

ship the liquor from one county to another in any quantity, even though it be lawfully sold in the first county and is bought for a lawful purpose by consignee.

Chapter 1, the later act, however, expressly permits (section 9, subsection 1) the personal transportation of liquor in gallon quantities by any person to his home; (subsection 3) the shipment to any person of gallon quantities from authorized dealers for authorized purposes; (subsection 4) the shipment to priests or ministers for sacramental purposes; (subsection 5) shipment to authorized dealers for sale for authorized purposes.

These two acts relate to the same subject matter and should be construed together. Being in *pari materia*, they should be harmonized, and effect should be given to the various provisions of each. *Pond* v. *Trigg*, 5 Heisk. (52 Tenn.), 532; *Graham* v. *Gunn*, 87 Tenn., 458, 11 S. W., 214; *Merriman* v. *Lacefield*, 4 Heisk., 209; *State* v. *Manson*, 105 Tenn., 232, 58 S. W., 319.

This rule of construction is of special force when such acts emanate from the same session of the legislature, for it is to be presumed that different acts passed at the same session with reference to the same subject, "are imbued by the same spirit and actuated by the same policy." *Houston & Texas Central R. R. Co.* v. *State*, 95 Tex., 507, 68 S. W., 777; Lewis' Sutherland Stat. Const. (2d Ed.), section 443.

The general purpose of both statutes was to regulate the shipment of liquors, and the first act, or chapter 3, undertook to deal with shipments from one county to

another. The last act, or chapter 1, undertook to deal with shipments from other States into this State, and also with shipments from point to point in Tennessee regardless of county lines. Chapter 1 included the same field covered by chapter 3. Shipments from county to county were within the purview of chapter 1, and, construing the two acts in *pari materia,* as parts of the same general legislation, the provisions of chapter 1, contained in the various subsections of section 9, regulating intrastate shipments, also regulate and qualify the general prohibition in chapter 3 against all shipments from county to county. So modified, the effect of chapter 3 is to prohibit shipments of liquor to the same extent only as such shipments are prohibited by chapter 1.

We do not think that either of these statutes interdicts the personal transportation of an individual's own liquor from one point in the State to another.

Chapter 1 clearly indicates no such object, as is apparent from its caption and the provisions of section 1, both heretofore set out, and to which further reference will be made.

It is true that chapter 3 is entitled "An act to prohibit the conveying" and shipping of intoxicating liquors, and that it forbids any person to ship or convey such liquor from one county to another. Nevertheless, when the act comes to fix the venue for the trial of offenses thereunder, it is said in section 2:

"Be it further enacted, that the circuit and criminal courts held in the county to which shipments are made,

or in which deliveries of intoxicants are made, shall have jurisdiction to indict and try violators of this statute; and grand juries shall be vested with inquisitorial powers over violations of this statute, and circuit and criminal judges shall call attention to this statute in charging grand juries.''

There is neither ''shipment'' nor ''delivery'' in case of one's carriage of one's own property. To ship or to deliver implies a change of custody. Either shipment or delivery necessitates a transfer of possession. Section 2, therefore can have no application to personal transportation.

It thus appears that no provision is made by this act for the jurisdiction of any case except those in which there is shipment or delivery. If the legislature had intended to forbid personal transportation as well as shipment, the venue in both cases would have been settled. Such an important matter would not have been left in doubt. If it had been proposed to create two offenses and to ordain the jurisdiction for their trial, certainly the jurisdiction of both would have been established by the act.

The word ''or'' between ''ship'' and ''convey'' is evidently used in the sense of ''and.'' They are often convertible. *Ransom* v. *Rutherford County,* 123 Tenn., 1, 130 S. W., 1057, Ann. Cas., 1912B, 1356; Lewis' Sutherland Stat. Const. (2d Ed.) section 397.

Reading the act that it shall be unlawful to ''ship and convey,'' the latter verb so connected acquires the

sense of the former, the idea of personal carriage is excluded, and the statute harmonizes in every part.

Referring again to chapter 1, the caption indicates that act to be one to regulate the shipment of intoxicating liquor, and to regulate the delivery of such liquor.

The verb "to ship" is thus defined in the International Dictionary:

"To put or receive on board a ship or other vessel for transportation; to send by water; to commit to any conveyance for transportation; hence to send away; to get rid of."

The verb "to deliver" is defined as follows:

"To give or transfer; to yield possession of; to make or hand over; to make delivery of; to commit; to surrender; to resign."

An examination of the foregoing definitions makes plainer our previous statement that there can be no delivery or shipment in the case of personal transportation of one's own property. Hence a caption which provides for the regulation of shipment and delivery only affords no room for provisions in an act to regulate personal transportation.

It is to be observed, further, that section 1 declares merely that it shall be unlawful to ship, carry, etc., intoxicating liquors for the purpose of delivery or to deliver the same. There is no prohibition against personal carriage.

Subsection 1 of section 9 of this act declares it to be lawful for any person—

It is therefore contended that, inasmuch as personal transportation of one gallon of liquor is permitted in the subsection quoted, personal transportation of more than one gallon is impliedly prohibited.

Ordinarily such a construction of a statute is proper. In this case, however, we can adopt no such construction. There is nothing in the caption, as we have seen, that would justify the inclusion in the act of a prohibition against the personal transportation of one's own liquor. Such a provision would be utterly beyond the scope of the title; and, if we construed the act to contain such provision, it would be in violation of section 17, art. 2, of the constitution, and the whole chapter would be void. In order, therefore, to save the act, we must decline to draw such an inference from subsection 1 of section 9, as we are urged to do.

It results therefore that neither chapter 1 nor chapter 3 of the Acts of the Second Extra Session of the legislature of 1913 are effective to prevent an individual from carrying his own intoxicating liquor from one point in this State to another. The two acts do prohibit the shipment of liquor from one point in this State to another, and make it unlawful for any person, firm, or corporation to transport for another liquor from one point in this State to another, or to make de-

livery to another, except under the conditions pre-scribed in subsections of section 9 of chapter 1.

There is no merit in the argument that this prohibi-tion of the transportation of liquor within the State is unconstitutional.  This court is fully committed to the rule that, in order to prevent fraud and to make the vio-lation of law more difficult, acts which in themselves are harmless may be prohibited.  As an aid to the enforce-ment of our laws against the sale of liquor, these stat-utes regulating the shipment of liquor are a valid ex-ercise of the police power of the State.  *State ex rel.,* v. *Persica,* 130 Tenn., 48, 168 S. W., 1056; *Kirk* v. *State,* 126 Tenn., 16, 150 S. W., 83, Ann. Cas., 1913D, 1239; *Motlow* v. *State,* 125 Tenn., 547, 146 S. W., 177; *State* v. *Mill Co.,* 123 Tenn., 399, 131 S. W., 867, Ann. Cas., 1912C, 248.

From the views that we have expressed, it follows that none of these plaintiffs in error were charged with any offense under the laws of Tennessee, and the sev-eral cases must be reversed and dismissed.